# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>VUUZLE MEDIA CORP., RONALD SHANE FLYNN, AND RICHARD MARCHITTO,<br><br>    Defendants. | **Civil Action No. 2:21-cv-1226-KSH-CLW**<br><br>**OPINION AND ORDER** |

## I. Introduction

This matter comes before the Court on the <u>ex parte</u> motion of plaintiff U.S. Securities and Exchange Commission (the "SEC") seeking an order under F<small>ED</small> R. C<small>IV</small>. P. 4(f)(3) authorizing service of the summons and complaint by alternative means (<u>i.e.</u> email) upon defendant Ronald Shane Flynn ("Flynn"). ECF No. 9. The Honorable Katharine S. Hayden has referred the motion to the undersigned. The Court has carefully considered the relevant submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court GRANTS SEC's motion.

## II. Background

In this offering fraud action, SEC alleges that from approximately 2016 through 2020, Flynn and defendant Vuuzle Media Corp. ("Vuuzle"), aided and abetted by defendant Richard Marchitto ("Marchitto"), sold more than $14 million of Vuuzle common stock and unlawfully diverted millions of dollars to fund a variety of Flynn's personal and business interests. <u>See generally</u> ECF No. 1 (the "Complaint"). Vuuzle is alleged to be "little more than a front for a boiler room Flynn controlled." <u>Id.</u> at ¶ 3. SEC filed suit in January 2021 and served Vuuzle and Marchitto shortly thereafter. ECF No. 1, 4, 5, 7. The instant motion arises from SEC's inability to obtain a

definitive physical address at which to serve Flynn, who is thought to be living abroad, and its resulting request that the Court authorize service via an email address believed to be actively used by Flynn.

### III.     Legal Standards

Rule 4(f), entitled "SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY", provides that "[u]nless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States[] by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3). Alternative service is regularly permitted where "(a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice; and (c) [plaintiff has] made a good faith effort to locate and serve defendants by traditional means." Vanderhoef v. China Auto Logistics Inc., 2019 U.S. Dist. LEXIS 205798, at *6 (D.N.J. Nov. 26, 2019) (citing Celgene Corp. v. Blanche Ltd., 2017 U.S. Dist. LEXIS 35126, at *6 (D.N.J. Mar. 9, 2017)). The Court "is afforded wide discretion when ordering service of process under Rule 4(f)(3)." U.S. Sec. & Exch. Comm'n v. Secure Cap. Funding Corp., 2011 U.S. Dist. LEXIS 160867, at *6 (D.N.J. Aug. 3, 2011) (quoting BP Prods. N. Am. v. Dagra, 236 F.R.D. 270, 271 (E.D. Va. 2006)).

The first of the enumerated factors primarily implicates the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163) (the "Hague Convention"). Concerning the second factor, "[f]or alternative service to comport with due process requirements, the method of service must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Vanderhoef,

2019 U.S. Dist. LEXIS 205798, at *6 (quoting Rio Props., v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)).

The third consideration is markedly flexible. SEC is "not required to make a showing that service through ordinary channels would be futile . . . to be granted permission to effectuate service under Rule 4[(f)](3)." United States Sec. & Exch. Comm'n v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC, 2018 U.S. Dist. LEXIS 167164, at *18 (D.N.J. Sept. 27, 2018). To the contrary, "[c]ourts can grant Rule 4(f)(3) requests even where a plaintiff does not show that the other means are unduly burdensome or impossible." Bravetti v. Liu, 2013 U.S. Dist. LEXIS 175060, at *8 (D.N.J. Dec. 11, 2013); see also Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc., 2020 U.S. Dist. LEXIS 228149, at *11 (S.D.N.Y. Dec. 4, 2020) ("Rule 4(f) is not hierarchical; there is no requirement that Plaintiff attempt service pursuant to provisions 4(f)(1) and 4(f)(2) before seeking permission of the court to effect service 'by other means,' pursuant to Rule 4(f)(3).") (citing authorities). Nevertheless, "it is helpful to plaintiff's case to show some measure of difficulty in effecting service by usual means." Bravetti, 2013 U.S. Dist. LEXIS 175060, at *8 (C.D. Cal. 2012) (citing Vanleeuwen v. Keyuan Petrochemicals, Inc., 2012 U.S. Dist. LEXIS 170921, at *4 (C.D. Cal. Nov. 30, 2012)).

Ultimately, "[t]he appropriate alternative service will vary depending upon the particular circumstances of the case," so long as it is not prohibited by international agreement and comports with due process. Bidonthecity.com LLC v. Halverston Holdings Ltd., 2014 U.S. Dist. LEXIS 45891, at *27-28 (S.D.N.Y. Mar. 31, 2014) (citing cases).

**IV.   Facts Alleged by SEC**

SEC states, and the record demonstrates, that Flynn has frequently moved around abroad over the past several years and has not entered the United States since 2016. Declaration of Drew

3

Isler Grossman, ECF No. 9-2 (the "Grossman Decl.") at ¶¶ 6-10 and exhibits thereto. To this end, in its original application, SEC represented that, in an effort to obtain a physical address for Flynn, it scrutinized thousands of records, spoke with Flynn's prior attorney (who declined to accept service), and attempted to contact Flynn directly by telephone, all to no avail. Id. at ¶¶ 4-5, 16-17 and exhibits thereto.

However—and as conceded by SEC—it is not the case that SEC has no inkling of Flynn's overseas location. SEC has obtained two active residence permits belonging to Flynn, one for the Philippines and one for the United Arab Emirates (the "UAE"). The Philippines permit contains a physical address in Cebu, Philippines (the "Philippines address"). As to UAE, SEC also possesses a document entitled "Tenancy Contract Information Registration Certificate", dated October 1, 2019, which indicates Flynn having leased an apartment in Dubai, UAE (the "Dubai apartment") through October 1, 2020. Id. at ¶¶ 6, 11 and exhibits thereto.

Upon review of these materials, the Court directed SEC to provide additional information concerning its efforts at verifying and effecting service at these locations. ECF No. 28, 31. SEC initially attempted, unsuccessfully, to find updated information on Flynn's residence in UAE. ECF No. 30; Supplemental Declaration of Drew Isler Grossman, ECF No. 30-1 (the "Supp. Grossman Decl.") at ¶ 5. However, it later obtained materials (i) indicating that Flynn relocated from the Philippines to the Dubai apartment in late 2019; and (ii) connecting the Dubai apartment address with a Vuuzle bank account as recently as February 2021. See ECF No. 32; Second Supplemental Declaration of Drew Isler Grossman, ECF No. 32-1 (the "Second Supp. Grossman Decl.") at ¶¶ 2, 5, 6 and exhibits thereto. SEC states that it has not attempted service at either of these locations because it is unclear whether Flynn lives there. ECF No. 32 at 1-2.

SEC provides evidence that Flynn uses the address rflynn48@gmail.com as his primary email. Flynn represented as much in a September 2020 press release, and SEC submits recent communications and financial records reflecting such usage. Grossman Decl. at ¶¶ 12-15 and exhibits thereto. SEC also cites a February 2021 press release indicating that Flynn has knowledge of this lawsuit. Id. at ¶ 18 and exhibit 21.

V. **Analysis**

   i. **Due Process**

Under the circumstances, service via email seems likely to "apprise [Flynn] of the pendency of the action and afford [him] an opportunity to present [his] objections." Vanderhoef, supra. SEC has adequately demonstrated that Flynn manages his personal and business affairs through his email address, with specific references to such usage as recently as late 2020. As stated in Morse v. Levine, 2019 U.S. Dist. LEXIS 219277 (S.D.N.Y. Dec. 19, 2019), report and recommendation adopted, 2020 U.S. Dist. LEXIS 1749 (S.D.N.Y., Jan. 3, 2020), service by email is generally permitted "where the movant has 'supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" Id. at *10 (quoting AMTO, LLC v. Bedford Asset Mgmt., LLC, 2015 U.S. Dist. LEXIS 70577, at *21-22 (S.D.N.Y. May 29, 2015)). The record shows this to be the case here. Moreover, considering Flynn's itinerance, email service not only is "proper --that is, reasonably calculated to apprise [Flynn] of the pendency of the action and afford [him] an opportunity to respond --but in this case, it [is] the method of service most likely to reach" Flynn. Rio Props., 284 F.3d at 1017; see, e.g., Chanel, Inc. v. Xu, 2010 U.S. Dist. LEXIS 6734, at *10 (W.D. Tenn. Jan. 27, 2010) (where defendants conducted business such that customers could contact them by email, "[s]erving Defendants by e-mail not only meets constitutional standards, but also is the method of service

5

most likely to reach Defendants"). The fact that Flynn appears to have notice of this lawsuit further supports the suitability of email service. See SEC v. Dubovoy, 2016 U.S. Dist. LEXIS 171793, at *10-11 (D.N.J. Dec. 13, 2016) (permitting alternative service where defendants "are likely already aware of the action against them at this point in time").

### ii. Compliance with International Agreement

"The Hague Convention is the exclusive method of effecting service between signatories to the convention." Midmark Corp. v. Janak Healthcare Private Ltd., 2014 U.S. Dist. LEXIS 60665, at *3 (S.D. Ohio May 1, 2014) (citing Kreimerman v. Casa Veerkamp S.A. de C.V., 22 F.3d 634, 643-44 (5th Cir. 1994)). UAE is not a Hague signatory, and the Court is not aware of any other international agreement governing service there. See https://www.hcch.net/en/states/hcch-members (last visited April 30, 2021); DAD-JColor Switch LLC v. Fortafy Games DMCC, 2018 U.S. Dist. LEXIS 85052, at *7 (E.D. Cal. May 21, 2018) (UAE is "not a party to The Hague Service Convention or any other treaty related to service of process") (citing cases). Therefore, to the degree Flynn may live in UAE, international agreement does not bar email service there.

The same is true to the extent that Flynn may reside in the Philippines, which is a Hague signatory. https://www.hcch.net/en/states/hcch-members. Assuming that the Philippines address is outdated, the Hague Convention is inapplicable. See Hague Convention, art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."); e.g., United States v. 200 Acres of Land, 773 F.3d 654, 659 (5th Cir. 2014) (same) (citing Hague Convention, art. 1); cf. Celgene Corp. v. Blanche Ltd., 2017 U.S. Dist. LEXIS 35126, at *6 (D.N.J. Mar. 9, 2017) ("Although Plaintiff identified an address associated with Blanche, its investigators determined that Blanche maintains no actual presence at that address.

Accordingly, Blanche's address may be considered unknown for the purpose of the Hague Convention."). If this is the case, therefore, "the court can skip the analysis on whether the Hague Convention allows email service" in the Philippines. United States v. Dinh, 2020 U.S. Dist. LEXIS 138517, at *4-5 (M.D. Fla. Aug. 4, 2020). And even if the Philippines address is presumed to be current, the Court concurs with the majority of cases holding that email service is permitted under the Hague Convention for parties living in countries such as the Philippines that have specifically objected to the Convention's provision for service via "postal channels", a phrase construed by these authorities to exclude service by email. See https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1435&disp=resdn (last visited April 30, 2021) (Philippines' objections to the Convention); e.g., Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd., 2021 U.S. Dist. LEXIS 76291, at *6-10 (E.D. Pa. Mar. 10, 2021) (discussing this issue and supporting majority view).

Consequently, the Court concludes that email service upon Flynn is not prohibited by international agreement.[1]

### iii. SEC's Attempts at Traditional Service

As discussed, SEC has identified two possible physical locations for Flynn, at neither of which service has been attempted. Notwithstanding, the Court will excuse SEC from expending further effort toward effectuating service at these (or other) locations.

This is primarily due to Rule 4(f)'s malleable framework. As described above, "[b]y design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries."

---

[1] The Court will not speculate as to Flynn's possible residences in locations other than UAE or the Philippines.

Bidonthecity.com LLC, 2014 U.S. Dist. LEXIS 45891, at *27 (quoting Philip Morris USA Inc. v. Veles Ltd., 2007 U.S. Dist. LEXIS 19780, at *8 (S.D.N.Y. Mar. 12, 2007)). Invoking this discretion, the Court is satisfied with SEC's efforts at attempting to locate and serve Flynn. While true that SEC has not exhausted every possible measure toward serving Flynn in person, it is equally the case that SEC has spent considerable effort trying to pin down Flynn's overseas address, with no definitive location being found. Cf. Vanderhoef, supra (alternative service proper where plaintiff makes "a good faith effort to locate and serve defendants by traditional means") (emphasis added). It likewise is reiterated that failed traditional service is by no means a precondition to alternative service.

The Court therefore will not require SEC to expend further resources trying to effectuate service at distant locales where, especially considering Flynn's itinerance, he may or may not be. Any such efforts, while only somewhat likely to succeed, almost certainly will prove time-consuming and expensive. To this end, "[c]ourts have . . . found that avoiding the additional expense of serving a defendant in a foreign country is a valid justification for granting an alternative method of service." Green v. Mitsui Sumitomo Ins. Co. (In re TK Holdings, Inc.), 2021 Bankr. LEXIS 401, at *35 (Bankr. D. Del. Feb. 23, 2021) (quoting Affinity Labs of Tex., LLC v. Nissan N. Am. Inc., 2014 U.S. Dist. LEXIS 185740, at *8 (W.D. Tex. July 2, 2014)). Relatedly, SEC provides documentation that Flynn and Vuuzle actively continue to solicit and receive funds from investors; SEC therefore argues that time is of the essence in prosecuting this action to avoid further harm to the public. See ECF No. 32 at 2; Second Supp. Grossman Decl. at ¶¶ 6-7 and exhibits thereto. While SEC's allegations are, of course, just that, they do further support allowing alternative service so that this matter does not remain dormant.

As stated in <u>Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nig.</u>, 265 F.R.D. 106 (S.D.N.Y. 2010), "a district court <u>may</u> require the parties 'to show that they have reasonably attempted to effectuate service on the defendant(s) . . . in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." <u>Id.</u> at 115-16 (quoting <u>Exp.-Import Bank of the United States v. Asia Pulp & Paper Co.</u>, 2005 U.S. Dist. LEXIS 8902, at *11 (S.D.N.Y. May 11, 2005) and citing <u>Ryan v. Brunswick Corp.</u>, 2002 U.S. Dist. LEXIS 13837, at *8 (W.D.N.Y. May 31, 2002)) (emphasis added). Considering the current record, the Court is satisfied that SEC is not "whimsically seeking alternate means of service" as an end-run around Rule 4. It therefore will not require SEC to pursue time and energy-rich service efforts at locations at which it is uncertain that Flynn resides in the first instance.

**VI.   Conclusion**

For the reasons stated, it is on this 3rd day of May 2021, hereby

**ORDERED** that SEC's motion for leave to serve the Summons and Complaint [ECF No. 1, 3] upon defendant Ronald Flynn by alternative means [ECF No. 9] is **GRANTED**; and it is further

**ORDERED** that within seven (7) days of this Order, SEC shall serve the Summons and Complaint upon defendant Ronald Flynn, along with a copy of this Opinion and Order, by email at rflynn48@gmail.com, whereupon service of the Summons and Complaint shall be deemed complete.

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.