UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>                 Plaintiff,<br><br>v.<br><br>VUUZLE MEDIA CORP., *et al.*,<br><br>                 Defendants. | Civil Action No. 2:21-cv-01226 (KSH) (CLW) |

## DECLARATION OF JEFFREY R. ANDERSON

I, Jeffrey R. Anderson, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I am an active Certified Fraud Examiner and a member of the Association of Certified Fraud Examiners. I am currently employed by the United States Securities and Exchange Commission (the "Commission" or "SEC") in Washington, D.C., as Assistant Chief Accountant in the Division of Enforcement. As part of my daily activities, I investigate possible securities law violations.

2. I respectfully submit this Declaration in support of the SEC's Motion for a Preliminary Injunction. Unless otherwise specified, I have personal knowledge of the facts set forth in this declaration and, if called upon as a witness, I could and would testify to such facts under oath. I am familiar with the matters set forth in this declaration based upon my personal knowledge and my review of information contained in the files of the Commission.

3. In the course of this investigation, I, along with other members of the SEC staff, obtained and reviewed account opening documents, account statements, transaction-level

1

documents such as cancelled checks, deposit and withdrawal slips, wire transfer instructions, and other financial records from J.P. Morgan Chase Bank, N.A. ("JPMC"), Bank of America, N.A. ("BOA"), TD Bank, N.A. ("TD Bank"), Noor Bank PJSC ("Noor Bank"), Dubai Islamic Bank, PJSC ("DIB"), Emirates NBD PJSC ("Emirates NBD"), United Overseas Bank Limited Co. in Singapore, and American Express Company ("American Express"). Business record certifications for JPMC, BOA, TD Bank, American Express, and United Overseas Bank are attached as **JRA Exhibits 1a through 1e**.

4. Certain accounts at DIB, Emirates NBD, and Noor Bank are denominated in Arab Emirati Dirhams ("AED"), the national currency of the United Arab Emirates ("UAE"), or in Euros. The AED is pegged to the U.S. dollar at a rate of 3.6725 AED to 1 USD. Accordingly, for purposes of our overall analysis, I converted amounts denominated in AED into USD at a rate of 3.6725 AED to 1 USD. Additionally, I converted amounts denominated in Euros to USD at a rate of 1 Euro to 1.12 USD, based on the average exchange rate from EUR to USD from July 2019 to October 2020, when the relevant transactions in Euros occurred.

A. **Tracing Investor Funds**

5. From approximately September 2016 through at least July 2021, at least 165 Vuuzle investors deposited approximately $22,821,817.94 into nine financial accounts located in the United States and the UAE, including seven entity accounts controlled by Defendants Richard Marchitto and/or Ronald Shane Flynn. Investors deposited funds primarily through electronic transfer, check, or wire transfer. Records indicate that the majority of investors are primarily located throughout the United States, including in New Jersey, California, Virginia, Wisconsin, and Texas.

6. In tracing investor funds to the bank accounts, we counted the following transactions as involving investor funds: (i) any deposit that carried a notation indicating the funds were intended for "investment", "share purchase," or "stock trading" purposes; (ii) any deposit from a known investor; and (iii) any other large round-dollar deposit from an individual, private entity, or retirement account.

7. In tracing funds from the bank accounts to investors, we counted as a payment back to an investor any payment to a known investor.

8. Using this methodology, we excluded from our calculation of investor deposits approximately $1,562,929.35 received into the accounts. These included approximately: a) $467,150.00 of deposits from Marchitto's personal and business accounts; b) $10,837.30 in potential income from film production or warehouse space rental; c) $1,666.57 in potential income from merchant services payments through Google and/or Paymentech; d) 232,557.60 in deposits from other Flynn-controlled accounts for which we have no records; e) and $850,717.88 in bank fee refunds, charge reversals, and other deposits for which the purpose could not be determined from produced records.

9. Apart from monthly social security payments of approximately $2,311.30 per month to Defendant Marchitto, there is no evidence that Defendants had any regular source of significant income during this time other than investor funds. It does not appear that Vuuzle earned a profit.

B. **The Accounts that Received Investor Funds**

   i. Bank Accounts Located in the United States

10. Vuuzle's U.S. bank records reflect a pattern in which investor funds are deposited and then quickly transferred out of the account, primarily to overseas accounts controlled by

Flynn, personal accounts belonging to Flynn or Marchitto, or to pay credit or debit card bills for personal expenses. Although these accounts have received hundreds of thousands of dollars in investor deposits each month, by month-end, the accounts usually hold less than $10,000.

11. On or about April 13, 2015, Marchitto opened an account in the name of "E Diamond Trade LLC" ending in *6506 located at JPMC ("JPMC 6506"). Marchitto had sole signature authority on this account. From on or about September 9, 2016, through on or about October 19, 2016, JPMC 6506 received approximately $175,895.00 in investor funds, and returned nothing back to investors. Attached as **JRA Exhibit 2** is the signature card for JPMC 6506. JPMC 6506 was closed on or about January 28, 2020 with a balance of $373.46, which Marchitto withdrew

12. On or about October 10, 2016, Marchitto opened an account in the name of "Boink Live Streaming LLC" ending in *3269 located at JPMC ("JPMC 3269"). On or about December 8, 2018, he name on the account was changed to Vuuzle Media Corporation. Marchitto had sole signature authority on this account. From on or about October 11, 2016 through at least June 1, 2020, JPMC 3269 received $13,690,624.38 in investor funds, and returned $258,579.88 back to investors. During this same period, records from JPMC 3269 reflect total revenue from potential business activities of about $1,666.57. Records from JPMC 3269 also reflect that during this period approximately $2,647,671.87 was sent from this account to Flynn's personal bank accounts overseas. Attached as **JRA Exhibit 3** are the signature cards for JPMC 3269 under the names Boink Live Streaming LLC and Vuuzle Media Corp. JPMC 3269 was closed on or about September 17, 2020 with a balance of $0.00.

13. On or about October 16, 2018, an investor made a $45,000 payment for Vuuzle shares via a credit card payment made to Vuuzle's law firm, Wilson Bradshaw & Cao, LLP. Attached as **JRA Exhibit 4** are emails confirming the payment and its purpose.

14. From on or about July 30, 2018 through at least November 30, 2018, a total of $138,300 in Vuuzle investor deposits were received via credit card payments made to a company called, ValuCorp, which was controlled by Vuuzle's then-Chief Executive Officer, Michael Gilburd. Attached as **JRA Exhibit 5** are examples of credit card confirmations concerning these deposits.

15. On or about July 9, 2020, Marchitto opened an account in the name of Vuuzle Media Corp. ending in *6986 located at BOA ("BOA 6986"). Marchitto had sole signature authority on this account. From on or about July 9, 2020 through on or about May 3, 2021, BOA 6986 received $1,723,032.28 in investor funds, and returned nothing back to investors. Attached as **JRA Exhibit 6** is the signature card for BOA 6986. BOA 6986 was closed on or about June 8, 2021, with a final balance of $232.84.

16. On or about May 3, 2021, Marchitto opened an account in the name of Vumu Music LLC ending in *3669 located at TD Bank ("TD Bank 3669"). Marchitto has sole signature authority on this account. From on or about May 11, 2021 through at least July 15, 2021, TD Bank 3669 received $511,450.00 in investor funds, and returned nothing back to investors. Attached as **JRA Exhibit 7** is the signature card for TD Bank 3669.

ii. Bank Accounts Located in the United Arab Emirates

17. On or about May 21, 2019, Flynn opened an account in the name of Vuuzle Media Corp FZE ending in *0039 located at Noor Bank PJSC ("Noor Bank 0039") in the UAE. Noor Bank 0039 was denominated in USD. Flynn had sole signature authority on this account.

From on or about September 4, 2019 through on or about October 22, 2020, Noor Bank 0039 received $4,609,937.00 in investor funds, and returned $5,000.00 back to investors. This included $269,280.00 in deposits from September 4, 2019 through on or about May 31, 2020, and $4,340,657.00 in deposits from on or about May 31, 2020 through on or about October 22, 2020. Attached as **JRA Exhibit 8** are select account opening documents for Noor Bank 0039.

18.     On or about November 1, 2020, a new account in the name of Vuuzle Media Corp FZE ending in *5501 was opened at Dubai Islamic Bank PJSC ("DIB") ("DIB 5501"), as a result of DIB's acquisition of Noor Bank in January 2020. DIB 5501 replaced accounts in the name of Vuuzle Media Corp FZE at Noor Bank, including Noor Bank 0039. The account accepted both AED and USD. Bank records reflect that Flynn has sole signature authority on this account. From on or about November 8, 2020 through at least March 13, 2021, DIB 5501 received $1,697,653.39 in investor funds, and returned nothing back to investors. An email from Vuuzle announcing the new bank account is attached as **JRA Exhibit 9.**

19.     On or about July 27, 2020, Flynn opened an account in the name of Vuuzle Media Entertainment ending in *4802 located at Emirates NBD PJSC ("Emirates NBD 4802") in the UAE. Flynn has sole signature authority on this account. The account is denominated in USD. From on or about November 25, 2020 through at least February 20, 2021, Emirates NBD 4802 received $229,925.89 in investor funds, and returned nothing back to investors. Attached as **JRA Exhibit 10** are select account opening documents for Emirates NBD 4802.

C.     **Defendants' Use of Investor Funds**

20.     In total, the SEC has identified $22,821,817.94 that Vuuzle raised from investors from September 2016 through at least July 2021. There is no evidence that Defendants have stopped their efforts to raise investor funds.

21. Of this, approximately $3,629,087.66 was directed towards expenses that appear related to Vuuzle's purported operations in the media and entertainment business. In calculating this figure, I reviewed bank records and supporting documentation and included: (1) payments to third-party technology vendors potentially related to video streaming applications; (2) payments to media companies for TV and video content; (3) costs that appeared related to the construction and operation of a film studio and the purchase of camera equipment; and (4) other costs potentially related to the development or operation of technology products or services.

22. Another approximately $5,993,112.26 in Vuuzle investor funds was diverted to cover the expenses of Defendants' stock sale operations. In calculating this figure, I included: (1) transfers to persons and entities who provide investor lead lists; (2) transfers to known Vuuzle stock promoters; and (3) transfers to Flynn-controlled entities in the Philippines, including Worldcom Online Marketing Inc., iMagically Inc., and Bonk Marketing Trade and Promotions, through which the Vuuzle stock sale campaigns were operated. Evidence supporting these assumptions is discussed in further detail in the Declaration of Drew Isler Grossman dated September 15, 2021, ¶¶ 30-33, 45-48, 57-59, 135-136 & Exhs. 4b, 26a-d, 36-37, 38a-d, 46-48, 87a-c.

23. Another approximately $10,310,345.66 in Vuuzle investor funds was diverted by Flynn and Marchitto by via direct transfers to their personal bank accounts, cash withdrawals, and charges to ostensibly corporate credit and debit cards for personal items, such as mortgage payments, dating and gambling applications, gold bars, and luxury travel. In calculating this figure, I included (1) any funds transferred to Marchitto and Flynn via electronic or wire transfers to accounts in their names, or through ATM, cash, or teller withdrawals; (2) charges to corporate credit and debit cards for personal items, based on a review of the statements of those

credit and debit cards; and (3) direct payments of personal expenses from investor funds by check, electronic transfer, or wire transfer.

24. Of this $10,310,345.66, the overwhelming majority was to Flynn's benefit. Flynn and Marchitto have diverted at least $5,072,708.60 in Vuuzle investor funds from Vuuzle accounts in the U.S. and UAE to Flynn's personal bank accounts in Singapore, the UAE, and the Philippines. In addition, Flynn has taken another $1,193,252.89 in cash withdrawals. Flynn used a further $443,219.82 for direct payment personal expenses out of ostensibly business accounts holding Vuuzle investor funds. These include payments to hospitals and pharmacies, restaurants, clothing retailers, perfume stores, online subscription services like Youtube Premium and Spotify, video game purchases, over $127,000 to law firms retained to defend Vuuzle U.S. in this action, and over $45,000 at Comicave. Comicave, according to its website, sells "licensed collectibles, action figures, pop-culture merchandise, apparels, novelty items, and the likes." (*See* https://store.comicave.com, last visited Aug. 19, 2021).

25. $3,379,016.65 was used to pay American Express bills for accounts opened by Marchitto and used by Flynn. American Express account statements reflect that Flynn used these American Express cards for obviously personal spending. For example, Flynn spent approximately $967,963.17 at jewelry stores in Singapore, UAE, and the Philippines, including $688,616.54 at Cara Jewelers in Dubai; and more than $512,285.21 on travel and entertainment, including almost $200,000 on luxury hotels such as the City of Dreams in Manila, the Ritz-Carlton in Jakarta, and the St. Regis and the Armani Hotel in Dubai and approximately $21,800.17 at the Dollhouse Bar in Angeles City.

26. These expenses were charged to seven American Express credit cards opened by Marchitto, three in Flynn's name and four in his own. The accounts were assigned to World

8

Trade Center Dental, using Marchitto's home address in Rockaway, New Jersey; World Trade Center Dental, at Marchitto's former dental office at 42 Broadway in New York, New York; Boink Live Streaming, using Marchitto's home address in Rockaway, New Jersey; and Vuuzle Media Corp., at 42 Broadway in New York, New York. A true and correct copy of account application forms for these forms and a chart of the accounts is attached as **JRA Exhibit 11.**

27. Marchitto also diverted investor assets for his own benefit. Records reflect that, from September 2016 through at least May 2020, Marchitto made dozens of transfers of Vuuzle investor funds between Vuuzle's U.S. bank accounts and his own personal and business bank accounts. As of May 2020, after nearly $800,000 in transfers back and forth, Marchitto appeared to have paid into Vuuzle accounts approximately $111,829.42 more than he had taken. However, since May 2020, Marchitto has received another more than $307,440.48 in Vuuzle investor funds. Marchitto received these funds via transfers out of Vuuzle accounts he controls to his own bank accounts, payments for his personal expenses (such as payments to his personal attorney, to cover his home utility bills, and to pay for parking in New York City), and approximately $103,000 transferred to his personal accounts by Flynn from Flynn-controlled accounts in the UAE. As a result, Marchitto has received approximately $195,611.06 in Vuuzle investor funds.

28. Marchitto also used Vuuzle investor funds to cover personal expenses incurred on a Vuuzle debit card connected to the U.S. bank account JPMC 3269. From October 2016 to at least May 2020, approximately $26,536.64 in investor funds was used to pay for expenses – such as Netflix subscriptions and Apple iTunes – that have no discernable business purpose. Apple receipts sent to Flynn and Marchitto confirm the personal nature of the iTunes purchases, the

vast majority of which were for mobile applications relating to online gambling, dating, and video games.

29. The remaining debits, totaling approximately $3,967,182.64, appear to have been used for other expenses, including, a) payments returned to about nine investors; b) charges from FedEx; c) rental payments to TKO Suites for Vuuzle's New York "office"; d) newswires fees for press releases; e) bank fees; f) attorney's fees; and g) other payments where the purpose could not be determined from produced records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2021 at Washington, D.C.

_____
Jeffrey R. Anderson