## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | **Civil Action No. 2:21-cv-01226-KSH-CLW** |
| **Plaintiff,** | **OPINION** |
| v. | **FILED UNDER SEAL** |
| **VUUZLE MEDIA CORP., et al.,** | |
| **Defendants.** | |

## I.    Introduction

Before the Court are the motions of plaintiff U.S. Securities and Exchange Commission (the "SEC") seeking (i) entry of a protective order (ECF No. 41); and (ii) leave to file an amended complaint (ECF No. 45), both of which have been referred to the undersigned by the Honorable Katharine S. Hayden. Defendant Vuuzle Media Corp. ("Vuuzle") has opposed both motions, defendant Richard Marchitto ("Marchitto) has opposed the motion to amend, and the SEC has submitted replies. ECF No. 43, 44, 62, 70, 71, 74. The Court held oral argument on the motion for a protective order on October 12, 2021 and January 19, 2022. The Court decides the motion to amend without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. Upon careful consideration of the parties' arguments, and for the reasons stated below, the Court grants in part and denies in part the SEC's motion for a protective order and grants the SEC's motion to file an amended complaint.

II.    **Background**

The SEC brought this offering fraud action in January 2021. <u>See</u> ECF No. 1 (the "Complaint"). The Complaint alleges that from approximately 2016 through 2020, Vuuzle and defendant Shane Flynn ("Flynn"), aided and abetted by Marchitto, sold more than $14 million of Vuuzle stock and unlawfully diverted millions of dollars to fund a variety of Flynn's personal and business interests. Vuuzle is alleged to be "little more than a front for a boiler room Flynn controlled." <u>Id.</u> at ¶¶ 1-3. Vuuzle has answered the Complaint, Marchitto has moved to dismiss,[1] and Flynn has yet to appear in the matter. ECF No. 17, 19.

The parties have agreed to the terms of a protective order governing the disclosure of confidential information obtained in discovery, except for the parameters of the SEC's right to disclose such information to third parties. The SEC's first motion concerns the scope of this disclosure. The motion to amend seeks to add allegations and parties based on information the SEC states it has obtained after the filing of this action.

III.    **Motion for Protective Order**

   a.  **Background**

The SEC moves for entry of a protective order under FED. R. CIV. P. 26(c), which authorizes the Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

---

[1] Marchitto's motion has been administratively terminated pending decision on the SEC's motion to amend. ECF No. 75.

As noted, the present dispute concerns the SEC's disclosure to third parties (in particular, criminal authorities such as the U.S. Department of Justice (the "DOJ")) of information that will be exchanged in discovery.[2] The SEC avers — and Vuuzle does not dispute — such materials will contain Vuuzle's investors' sensitive and confidential information worthy of protection.

After addressing the primary dispute, discussion at oral argument turned to the issue of delegated authority, as to which the Court directed, and the parties submitted, supplemental briefing, followed by a second oral argument and further briefing concerning the procedure for potential disclosures by the SEC. ECF No. 68, 69, 72, 73, 79-81. The Court will address these topics <u>seriatim</u>.

### b. <u>Analysis</u>

#### i. <u>The SEC's Right to Share Confidential Information</u>

The SEC originally proposed protective order language providing that

> [n]otwithstanding any other provisions contained herein, nothing in this Protective Order shall be construed to limit or otherwise abrogate the SEC's ability to make its files available pursuant to the "Routine Uses of Information" section of SEC Forms 1661 or 1662, or to comply with any other statutory or international obligation.

ECF No. 41-3 at ¶ 6.

The SEC since has proposed the following:

> Notwithstanding any other provisions contained herein, nothing in this Protective Order shall be construed to

---

[2] The SEC initially framed this issue as concerning materials it had obtained in its investigation and that it was preparing to produce to the defendants. <u>See</u> ECF No. 41-1 at 5-6. It since has been clarified that the protective order pertains to information that the SEC expects to receive in discovery. <u>See</u> ECF No. 81 at 7, 9.

> limit or otherwise abrogate the SEC's ability to share documents and information outside the agency as authorized by federal law, including, but not limited to, Securities Act of 1933 Sections 19(d) and 20(b) [15 U.S.C. §§ 77s(d), 77t(b)]; Securities Exchange Act of 1934 Sections 17(b), 21(d), and 24(c) [15 U.S.C. §§ 78q(b), 78u(d), 78x(c)]; Investment Advisers Act of 1940 Section 209(d) [15 U.S.C. §80b-9(d)]; and Investment Company Act of 1940 Section 42(d) [15 U.S.C. §80a-41(d)]; or to comply with any other statutory or international obligation.

ECF No. 69-2 at ¶ 6.[3]

> Vuuzle's proposed language states:

> As provided in Section 21(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), the Commission may transmit such evidence as may be available concerning such acts or practices as may constitute a violation of any provision of the Exchange Act or the rules or regulations thereunder to the Attorney General (the United States Department of Justice). Further, as provided in Section 20(b) of the Securities Act of 1933 ("Securities Act"), the Commission may transmit such evidence as may be available concerning such acts or practices as may constitute a violation of any provision of the Securities Act or the rules or regulations thereunder to the Attorney General (the United States Department of Justice).

ECF No. 43-4 at ¶ 6.

---

[3] As impliedly recognized by the SEC's change of course, Forms 1661 and 1662 are improper bases for the provision at issue. See, e.g., SEC v. Pulier, 2020 U.S. Dist. LEXIS 21485, at *7 (C.D. Cal. Jan. 30, 2020) ("The Court is not persuaded by the SEC's proposal for the protective order to encompass uses of disclosed confidential material as provided in its Form 1662."). The Court will therefore disregard the SEC's original proposition premised upon Forms 1661 and 1662.

As correctly noted by the SEC during oral argument, "[t]he authority for the SEC's ability to share information comes from [f]ederal statutes." ECF No. 68 at 17. The Court therefore begins its analysis with the relevant statutory authority.[4]

Section 20(b) of the Securities Act of 1933 (the "Securities Act") provides that

> [w]henever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation [of the securities laws] . . . . [t]he Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General . . . .

15 U.S.C. § 77t(b). Section 21(d) of the Securities Exchange Act of 1934 (the "Exchange Act") is substantially similar. 15 U.S.C. § 78u(d)(1). Section 24(c) of the Exchange Act is somewhat broader, stating that

> [t]he Commission may, in its discretion and upon a showing that such information is needed, provide all "records" (as defined in subsection (a)) and other information in its possession to such persons, both domestic and foreign, as the Commission by rule deems appropriate if the person receiving such records or information provides such assurances of confidentiality as the Commission deems appropriate.

15 U.S.C. §78x(c). Similarly, under SEC regulation, "[t]he Commission may, in its discretion and upon a showing that such information is needed, provide nonpublic information in its possession to [certain enumerated] persons [such as government agencies] if the person receiving such nonpublic information provides such

---

[4] While the briefing and argument centered on the provisions that immediately follow, this is not intended to be an exhaustive recitation of the relevant statutes.

assurances of confidentiality as the Commission deems appropriate". 17 C.F.R. § 240-24c-1.[5]

Plainly, "there is express statutory and regulatory authority for and a history of cooperation between the SEC and the Justice Department." <u>SEC v. Horowitz & Ullman, P.C.</u>, 1982 U.S. Dist. LEXIS 11548, at *16 (N.D. Ga. Mar. 4, 1982) (citing Sections 20(b) and 21(d)); <u>see</u>, <u>e.g.</u>, <u>SEC v. Dresser Indus., Inc.</u>, 628 F.2d 1368, 1385-87 (1980), <u>cert.</u> <u>denied</u>, 449 U.S. 993, 101 S. Ct. 529 (1980) (<u>en</u> <u>banc</u> court observing that "[b]oth the ″33 Act and the ″34 Act and other statutes related to securities law enforcement as well expressly authorize the SEC to 'transmit such evidence as may be available . . . to the Attorney General'", and overturning panel order that had precluded SEC from providing information to DOJ) (quoting Sections 20(b) and 21(d)); <u>United States v. Fields</u>, 592 F.2d 638, 646 and n.18 (2d Cir. 1978) ("The Commission's Manual [of Administrative Regulations] specifically authorizes and [e]ncourages the disclosure of non public information to other federal law enforcement officials . . . .") (citing Sections 171.06 and 171.07 of the SEC Manual of Administrative Regulations); SEC Enforcement Manual (ECF No. 69-1) (the "Enforcement Manual") at § 5.1 ("The SEC's rules permit the staff, by delegated authority, to grant access to nonpublic information to domestic and foreign governmental authorities, SROs, and other persons specified in Section 24(c) of the Exchange Act and Rule 24c-1 thereunder.").

---

[5] SEC regulations carry the force of law. <u>See</u> <u>Lawson v. FMR LLC</u>, 571 U.S. 429, 477, 134 S. Ct. 1158, 1186-87 (2014) (citing authorities).

On this discrete point, the parties appear to concur. The SEC stated at oral argument that "if the protective order cited to -- those relevant statutes, I think that the SEC could -- could be okay with that. Because . . . [the statutes are] the source of the SEC's authority to share [information]." ECF No. 68 at 23-24. Vuuzle similarly confirmed that it is "not suggesting that you can [ ] circumvent the appropriate statute[s]." Id. at 6. To this end and as noted, both parties' proposed language expressly references the SEC's statutory right to transmit information.

Before it can tie a bow on this matter, however, the Court must address one issue repeatedly raised by Vuuzle: the distinction between information acquired in an investigation versus that obtained in discovery. Vuuzle appears to take the position that the authority permitting disclosure applies only to the former, and that as to the latter, "Fed. R. Civ. P. 26(b)(1), Discovery Scope and Limits, should circumscribe the use of information obtained during litigation discovery", with Rule 26(b)(1)'s relevance provision foreclosing "the Commission [from using] information produced as it wishes." See, e.g., ECF No. 43 at 6.

Taking the second point first, Vuuzle is incorrect as to the reach of Rule 26(b)(1). The rule governs the scope of information a party may obtain in discovery, not how a party uses it. Instead, and as noted, Rule 26(c)'s good cause standard controls here. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) ("In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.") (citing FED. R. CIV. P. 26(c); Smith v. Bic Corp.,

869 F.2d 194, 199 (3d Cir. 1989)). Courts also enjoy the "inherent power to grant orders of confidentiality over materials not in the court file." Id. at 785. None of this authority derives from Rule 26(b)(1), which is irrelevant to the present dispute.

Vuuzle's distinction between investigatory and litigation discovery is better taken. Indeed, Fields, Dresser and Horowitz each involved the disclosure of information obtained through SEC investigations. A careful review of the statutory authority, however, refutes the notion that the SEC's right to share information is limited to the investigatory arena. First, Section 20 of the Securities Act is entitled "Injunctions and prosecution of offenses" and subsection (b) thereof is entitled "Action for Injunction or Criminal Prosecution in District Court"; similarly, Section 21(d) of the Exchange Act is called "Investigations and actions". 15 U.S.C. §§ 77t; 78u (emphases added). Applying the "title and headings canon," which instructs that "[t]he title and headings [of a statute] are permissible indicators of meaning", Fulton v. City of Phila., 141 S. Ct. 1868, 1928 (2021) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 221 (2012)), it emerges that the SEC's statutory authority to share information applies beyond the investigatory arena.

The statutes' text confirms as much: both Section 20(b) and Section 21(d) discuss district court actions, and Section 24(c) very broadly defines the records the SEC may disclose as including "documents filed with or otherwise obtained by the Commission pursuant to this chapter or otherwise." 15 U.S.C. § 77t(b); 15 U.S.C. §§ 78u(d)(3)(A), 78x(a); see, e.g., Blinder, Robinson & Co. v. SEC, 837 F.2d 1099, 1101

(1988) (referencing SEC's "civil enforcement action pursuant to its statutory authority under section 20(b) of the 1933 Act and section 21(d) of the 1934 Act") (citations omitted). It is thus clear that "with respect to the investigation <u>and prosecution</u> of potential violations of S.E.C. regulations and laws . . . the sharing of information between agencies is authorized by statute." <u>United States v. Harris</u>, 2010 U.S. Dist. LEXIS 126620, at *42 (N.D. Ga. Oct. 22, 2010) (emphasis added; citing cases), <u>report and recommendation adopted</u>, 2010 U.S. Dist. LEXIS 126612 (N.D. Ga., Dec. 1, 2010).

In view of the above, the Court construes the fact that much of the relevant authority concerns investigations rather than litigation as incidental rather than reflective of statutory intent. As one example, while Vuuzle is correct that <u>Fields</u> primarily focused on investigatory rather than litigation materials, the court there did not signal an intention to constrain its holding to the former. To the contrary, it cited portions of the SEC's Manual calling for the sharing of both information "developed in the course of an investigation . . . and other non-public information". 592 F.2d at 646 and n.18. Had the court (or the SEC, for that matter) wished to limit these tasks to information obtained through investigations, it could have. Tellingly, it did not. The Court therefore declines to cabin the statutory grants of authority for the SEC to share information to the investigatory arena, and will insert in the protective order the following, premised largely upon the SEC's second proposal:

> **Notwithstanding any other provisions contained herein, nothing in this Protective Order shall be**

> construed to limit or otherwise abrogate the U.S.
> Securities and Exchange Commission's (the "SEC")
> ability to share documents and information outside
> the agency (i) as authorized by federal law,
> including but not limited to 15 U.S.C. §§ 77s(d),
> 77t(b), 78q(b), 78u(d), 78x(c), 80b-9(d), or 80a-41(d);
> or (ii) to comply with any other statutory or
> international obligation.

### ii. <u>Delegated Authority</u>

The question of delegated authority asks whether the sharing of information discussed above must be executed by one of the five officials who comprise the "Commission"; or if these individuals can delegate this task to agency staff. As above, the Court begins with the relevant statute. Section 4(a) of the Exchange Act provides that

> the Securities and Exchange Commission shall have the
> authority to delegate, by published order or rule, any of
> its functions to a division of the Commission, an
> individual Commissioner, an administrative law judge, or
> an employee or employee board, including functions with
> respect to hearing, determining, ordering, certifying,
> reporting, or otherwise acting as to any work, business, or
> matter.

15 U.S.C. § 78d–1(a). Pursuant to this authority, the SEC has issued a regulation under which "the Securities and Exchange Commission hereby delegates, until the Commission orders otherwise, [certain] functions to the Director of the Division of Enforcement to be performed by him or under his direction by such other person or persons as may be designated from time to time by the Chairman of the Commission." 17 C.F.R. § 200.30-4. Among the functions enumerated in Section

10

200.30-4 is "[t]o administer the provisions of § 240.24c-1". Id. at § (a)(7).[6] Section 240.24c-1 provides for the SEC's sharing of information to, inter alia, "[a] federal, state, local or foreign government or any political subdivision, authority, agency or instrumentality of such government".[7] 17 C.F.R. § 240.24c-1(b)(1); see also Enforcement Manual at § 5.1, supra (permitting SEC staff, "by delegated authority" to share information under Section 24(c) of the Exchange Act and Rule 24c-1).

The Second Circuit's discussion in Fields is instructive as to the SEC's broad authority to delegate the sharing of information. Fields concerned a criminal indictment obtained by the DOJ through information received from an SEC investigation. 592 F.2d at 638-44. Similar to Vuuzle's argument here, in Fields "[t]he claim in essence [wa]s that the statutes authorize only the 'Commission' to transmit evidence to the Attorney General for criminal proceedings, and that therefore the informal criminal reference . . . by the SEC[ ] . . . to the United States Attorney's office constituted an invalid criminal reference requiring dismissal of the resulting indictment." Id. at 644. The Second Circuit held this argument to be "totally without merit." Id. It explained:

> In view of the fraudulent transactions charged in the instant indictment, we look to the Securities Act of 1933 and the Securities Exchange Act of 1934, each of which provides the statutory authorization for the Commission to transmit to the Attorney General available evidence of

---

[6] Section 200.30-4 conditions this authority: "access to nonpublic information . . . shall be provided only with the concurrence of the head of the Commission division or office responsible for such information or the files containing such information." 17 C.F.R. § 200.30-4(a)((7).

[7] The DOJ is a federal governmental agency. See, e.g., Benhoff v. United States DOJ, 2016 U.S. Dist. LEXIS 164583, at *2 (S.D. Cal. Nov. 29, 2016).

> violations of the statutes involved for possible criminal proceedings. Moreover, the Commission is authorized by statute [i.e., Section 4(a) of the Exchange Act] to delegate "any of its functions" to an employee, among others. In its Manual of Administrative Regulations, the Commission has delegated its authority to act to Directors of Divisions and Regional Administrators, and further has empowered these officials to redelegate such authority to designated members of their respective staffs. The Commission's Manual specifically authorizes and [e]ncourages the disclosure of non public information to other federal law enforcement officials even when it has been developed in other than a formal investigation. . . . [I]t has been the SEC policy . . . for the Regional Administrator to redelegate his authority to lower echelon attorneys for the purpose of conferring with the United States Attorney's office . . . . We decline . . . to interfere with this commendable example of inter-agency cooperation.

Id. at 645-46 and nn. 16-19 (citing, e.g., 15 U.S.C. §§ 77t(b), 78d–1(a), 78u(d);

quoting H.R. Rep. No. 95-650, 95th Cong., 1st Sess. 10 (Sept. 28, 1977)

("Traditionally, there has been a close working relationship between the Justice

Department and the SEC. The Committee (on Interstate and Foreign Commerce)

fully expects that this cooperation between the two agencies will continue. . . .");

declining to dismiss indictment). The court also cited to Section 171.02 of the SEC's

Manual of Administrative Regulations, which provides that

> [a]uthority to act in matters covered in this Section is hereby delegated by the Commission to Directors of Divisions and Regional Administrators having cognizance over cases in which cooperation with other Federal, State or foreign authorities or self-regulatory organizations is in the public interest. These Commission officials may redelegate authority to act to designated members of their staffs.

592 F.3d at 646 n.17.

Perhaps in recognition of the substantial authority permitting the SEC to delegate the sharing of information, Vuuzle contends, as above, that this authority is limited to information obtained under the SEC's investigative procedures, to the exclusion of information obtained in litigation. Vuuzle points to the fact that Section 200.30-4 delegates the following to the Director of the Division of Enforcement:

> [(a)](18) With respect to enforcement proceedings in Federal court, to:
>
> > (i) Dismiss claims against entities that are defunct, the subject of Federal or foreign bankruptcy proceedings, or without material assets; and
> >
> > (ii) Dismiss claims against persons or entities that duplicate or overlap with other pending claims against those persons or entities, unless the dismissal would involve claims requiring a higher level of intent than that required by the remaining claims, result in a reduction of disgorgement available for the claims in the Commission's complaint, or eliminate the statutory basis for a bar sought in the Commission's complaint.

17 C.F.R. § 200.30-4(a)(18). The clause "[w]ith respect to" can be read as either introductory (i.e., the federal court enforcement-related tasks that follow it may be delegated) or, as Vuuzle argues, limiting (i.e., in federal court enforcement proceedings, only such tasks may be delegated). Although not cited by Vuuzle, its argument rests upon the canon of expressio unius est exclusio alterius, under which "expressing one item of [an] associated group or series excludes another left unmentioned." Chevron U.S.A. v. Echazabal, 536 U.S. 73, 80, 122 S. Ct. 2045, 2049 (2002) (quoting United States v. Vonn, 535 U.S. 55, 65, 152 L. Ed. 2d 90, 122 S. Ct. 1043 (2002).

For several reasons, the Court rejects Vuuzle's interpretation. First, expressio unius "depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which are abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded." Chevron, 536 U.S. at 81 (citing E. Crawford, Construction of Statutes 337 (1940)); see also United States v. Cartagena-Lopez, 979 F.3d 356, 362 (5th Cir. 2020) ("[T]he 'canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it.' That turns on two inquiries: (1) Whether the statutory text communicates exclusivity, and (2) whether the included term goes hand in hand with the missing term, allowing the inference that the omission has interpretive force. Without these clues, we cannot discern any meaning from statutory omissions.") (quoting Marx v. Gen. Revenue Corp., 568 U.S. 371, 381, 133 S. Ct. 1166, 185 L. Ed. 2d 242 (2013); Barnhart v. Peabody Coal Co., 537 U.S. 149, 168-69, 123 S. Ct. 748, 760 (2003)) (quotation marks omitted). The canon falters here on both fronts. First, dismissals of duplicative claims or claims against defunct entities do not necessarily go "hand in hand" with the sharing of information. Second, the statutory text does not necessarily communicate exclusivity: the phrase "[w]ith respect to" can be construed as an introduction at least as well (if not better than) as a limitation. The circumstances thus do not "support[ ] a sensible inference that the [sharing of information] must have been meant to be excluded" from the list of delegable federal court enforcement proceeding functions. Chevron, supra (emphasis added).

Moreover, to adopt Vuuzle's approach would result in a conflict with other portions of the regulation.[8] Subsection (a)(2) permits delegation of the task, "[i]n nonpublic investigative proceedings, to grant requests of persons to procure copies of the transcript of their testimony under § 203.6 of this chapter." 17 C.F.R. § 200.30-4(a)(2) (emphasis added). A consistent application of Vuuzle's construction would mean that the only delegable function within the realm of nonpublic investigative proceedings is the granting of requests for transcripts, a conclusion that cannot be squared with the regulation's provision delegating the "order[ing] the making of private investigations", id. at § (a)(13), as well various other references to investigations that do not distinguish between public and private. See id. at, e.g., §§ (a)(3), (11).

Next, "[h]owever well statutory canons such as expressio unius may serve at times to aid in deciphering legislative intent, they have long been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose." United States v. Singh, 979 F.3d 697, 717 (9th Cir. 2020) (quoting SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350, 64 S. Ct. 120, 88 L. Ed. 88 (1943)) (brackets omitted). As explained, the larger statutory and regulatory scheme here signals a liberal approach toward the sharing of information and the delegation thereof. Vuuzle's limiting distinction cuts in the exact opposite direction.

---

[8] "The "harmonious-reading canon" teaches that "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." City Beverage-Illinois, LLC v. Vital Pharm., Inc., 2021 U.S. Dist. LEXIS 88308, at *9 (S.D. Fla. May 10, 2021) (quoting Scalia & Garner, Reading Law § 27, at 180).

Finally, not only is <u>expression unius</u> "only a guide", <u>Vonn</u>, 535 U.S. at 65, it carries further "reduced force in the context of interpreting agency administered regulations", <u>Whetsel v. Network Prop. Servs.</u>, 246 F.3d 897, 902 (7th Cir. 2001) (citing cases), with one appellate court calling it "an especially feeble helper in an administrative setting". <u>Cheney R. Co. v. ICC</u>, 902 F.2d 66, 69 (D.C. Cir. 1990). Thus, even if Vuuzle's implication-by-omission argument could work within the statutory arena, the Court hesitate to allow it to carry the day in the present regulatory context.

In sum, "<u>[e]xpressio unius</u> just fails to work here." <u>Chevron</u>, 536 U.S. 73 at 84. The Court therefore denies Vuuzle's argument premised upon the introductory language of Section 200.30-4(a)(18).

Vuuzle's remaining arguments require considerably less discussion. Its statement that "[t]here is no [function] authorizing unrestrained use of civil discovery under Fed. R. Civ. P 26(b)(1)", ECF No. 72 at 7, is a misnomer, since, as noted, Rule 26(b)(1) does not "[ ]restrain[ ] use of civil discovery" in the first instance. Vuuzle also relies on the notion that the statutes refer only to the "Commission", an argument that, if accepted, would undercut the notion of delegation of authority altogether. Next, the fact that Section 240.24c-1 does not reference delegated authority is unremarkable, since the regulation discussing such authority expressly references that Section. Finally, as a not insignificant practical matter, to accept Vuuzle's position would render a five-member Commission

responsible for making all decisions and executing all tasks relating to the disclosure of confidential information, an obviously unsustainable result.[9]

For the reasons stated, the Court finds the SEC to have the better argument as to delegated authority. It will therefore include the following language in the protective order:

> **The SEC may delegate this function in accordance with, and to the extent permitted by, (i) 15 U.S.C. § 78d–1(a); (ii) 17 C.F.R. § 200.30-4; (iii) 17 C.F.R. § 240.24c-1; or (iv) any other relevant statutory or regulatory authority.**

### iii.  Procedure for Potential Disclosures

Vuuzle has raised concerns as to the possible downstream release of confidential information transmitted by the SEC. It accordingly requests that the Court impose a five-pronged framework to govern the SEC's disclosures. Vuuzle's proposal would require, among other things, the SEC notifying the Court whenever it intends to share confidential information, Defendants being offered the opportunity to object, and a representative of the receiving agency providing a

---

[9] Vuuzle's cited authority is not to the contrary. The court in <u>Sec. & Exch. Comm'n v. Pulier</u>, 2020 U.S. Dist. LEXIS 21485 (C.D. Cal. Jan. 30, 2020) rejected "the SEC's proposal for the protective order to encompass uses of disclosed confidential material as provided in its Form 1662", as the Court has done above. <u>See id.</u> at *7. <u>S.E.C. v. Garber</u>, 2014 U.S. Dist. LEXIS 13626 (S.D.N.Y. Jan. 30, 2014) involved a request for the SEC to use the defendants' tax returns for the vague purposes of "regulat[ing], administer[ing] and enforce[ing] the securities laws"; the court therefore denied granting "the SEC carte blanche to pass the tax returns along to any agency that might conceivably have some interest, as yet inchoate, in investigating the defendants." <u>Id.</u> at *3-4. Finally, the court in <u>Sec. & Exch. Comm'n v. Volkswagen Aktiengesellschagt</u>, No. 19-cv-01391-CRB (JSC) (N.D. Cal. Sept. 23, 2021), D.E. 70 (ECF No. 62-1) was particularly concerned with confidential information being used by foreign governments, a concern not relevant here.

sworn declaration or affidavit providing that, inter alia, it will keep the information confidential. ECF No. 79.

With one exception discussed below, the Court agrees with the SEC that such requirements are unwarranted and would impose an unreasonable burden on the SEC (as well as the Court). This is primarily because there is already in place a detailed statutory and regulatory scheme governing these matters. As stated by the D.C. Circuit in connection with an unrelated but illustrative statute, "[t]he Veterans' Records Statute provides carefully crafted rules and procedures regulating disclosure of records, exceptions and limitations, and civil and criminal penalties for specific violations. There is no suggestion that Congress intended to permit local or state laws to impose additional requirements and penalties upon the disclosure process." Doe v. Stephens, 851 F.2d 1457, 1465 (D.C. Cir. 1988) (citation omitted).

The statutory and regulatory framework here is similarly comprehensive. See, e.g., 15 U.S.C. § 78x(b) ("It shall be unlawful for any member, officer, or employee of the Commission to disclose to any person other than a member, officer, or employee of the Commission, or to use for personal benefit, any information . . . or other document filed with or otherwise obtained by the Commission . . . in contravention of the rules and regulations of the Commission . . . ."); 17 C.F.R. § 200.19b ("[A]ccess [to nonpublic information] under [§ 240.24c-1] shall be granted only with the concurrence of the head of the division or office responsible for the information or the files containing it."); 17 C.F.R. § 200.30-4(a)((7) (same); see also

Enforcement Manual at ¶ 5.1 ("Discussions [of nonpublic information] must be authorized by officials at or above the level of Assistant Director. . . . The SEC's rules require that all [information] access requests be in writing and signed by an official who is in a sufficiently senior or supervisory position to make and enforce required representations."). Clearly, Congress (and the SEC, through its regulatory authority) has contemplated the SEC's disclosure of sensitive information and has set forth rules to address the potential for fallout.

As observed by the Third Circuit, "the Securities and Exchange Commission has been entrusted by Congress with the interpretation, administration, and enforcement of the Securities Acts." City Capital Assocs. Ltd. P'ship v. Interco, Inc., 860 F.2d 60, 64 (3d Cir. 1988). This includes control over the disclosure of confidential information, discretion as to which is statutorily vested in the SEC. See, e.g.,15 U.S.C. § 78x(c) (Commission may transmit records "in its discretion" upon receiving "assurances of confidentiality as the Commission deems appropriate"). Ultimately, then, Vuuzle's quarrel is with the legislation imbuing considerable oversight authority in the SEC. To augment the statutory scheme without a specific showing of good cause would be to undermine the Congressional confidence placed in the Commission.

It is also noteworthy that Vuuzle does not provide any case law relevant to its sweeping request. The Court's research has revealed one such matter. SEC v. R.J. Reynolds Tobacco Holdings, Inc., 2004 U.S. Dist. LEXIS 24545, (D.D.C. June 29, 2004) involved a tobacco company's request to restrict the SEC's right to disclose

information sought by subpoena. The defendant, a self-described "popular litigation target," was particularly worried about potential disclosures to the DOJ, which was concurrently prosecuting a criminal action against it. See generally id. at *28-41.

The court was "troubled by the lack of any procedural check or balance in this unique context where another government agency is presently actively litigating against the subject of the SEC's investigation." It therefore imposed "a limited protective order" geared toward providing the defendant "with an assurance that the SEC will not share with the DOJ the information [defendant] produces to it in a circumstance inconsistent with the strictures of the SEC's securities enforcement mandate." This order required that, "before the SEC provides any information obtained pursuant to the Subpoena to lawyers or other persons involved in the [case being litigated by the DOJ], the SEC shall, through an ex parte process, advise and obtain the permission of this Court." Id. at *41-42.

By and large, R.J. Reynolds is instructive by way of contrast. Vuuzle is not a particularly popular litigation target and there is no active DOJ litigation against it.[10] Moreover, despite its concerns arising from these factors, the R.J. Reynolds court imposed only a limited restriction (one with no analogue here, since the DOJ is not presently litigating against Vuuzle). Despite the "unique" circumstances in

---

[10] Flynn has been criminally charged, see ECF No. 41-5, but Vuuzle has not. While an argument could be made that the safeguards provided in R.J. Reynolds should be applied as to Flynn, the Court will not reward Flynn's failure to appear in this action (as well as his possibly making intentional efforts to avoid U.S. jurisdiction, see ECF No. 9-8) by affording him protections not required by the law.

R.J. Reynolds, the court did not impose any restrictions akin to what Vuuzle asks for here.[11]

As a result, the Court largely rejects Vuuzle's request to impose extra-statutory restrictions on the SEC's sharing of confidential information. However, the Court finds good cause for the protective order to include "assurances of confidentiality" language similar to that contained in Section 24(c) of the Exchange Act and 17 C.F.R. § 240.24c-1. The Court will therefore include the following in the protective order:

> **Any disclosure under this provision shall require, as a precondition, that (i) the person; or (ii) a duly authorized agent, employee or representative of the entity receiving such evidence provides such assurances of confidentiality as the SEC deems appropriate.**

## IV. Motion to Amend the Complaint

### a. Legal Standard

Because the SEC moved to amend its Complaint within the time set by the Court, ECF No. 38 at ¶ 3, its motion is governed by FED. R. CIV. P. 15(a)(2), under which "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Under Rule 15, the decision to permit an amendment rests in the sound discretion of the Court." Jemas v. CitiMortgage, Inc., 2013 U.S. Dist. LEXIS 44476, at *7 (D.N.J. Mar. 28, 2013) (citing cases). The "three instances when a court

---

[11] Even the constraint imposed in R.J. Reynolds is arguably an overreach. The D.C. Circuit in Dresser, for example, rejected restrictions on the sharing of information "once the Justice Department initiates criminal proceedings by means of a grand jury"). 628 F.2d at 1385.

typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend [are] when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 839 F.3d 242, 249 (3d Cir. 2016) (quoting U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849 (3d Cir. 2014)). The Third Circuit "has interpreted these factors to emphasize that 'prejudice to the non-moving party is the touchstone for the denial of the amendment.'" Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Cornell & Co. v. Occupational Safety and Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)).

Under Rule 15, "motions to amend pleadings should be liberally granted." Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (citing Adams v. Gould Inc., 739 F.2d 858, 867-68 (3d Cir. 1984)). This is a "less exacting standard" than that which applies under Rule 16 — i.e., in cases, unlike this one, where a party moves to amend after its time to do so has expired. See Fermin v. Toyota Material Handling, U.S.A., Inc., 2012 U.S. Dist. LEXIS 56422, at *9 (D.N.J. Apr. 23, 2012). Given this liberal standard, "the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." Dopico v. IMS Trading Corp, 2016 U.S. Dist. LEXIS 11681, at *3-4 (D.N.J. Feb. 1, 2016) (quoting Wainwright v. City of Sharon, 2016 U.S. Dist. LEXIS 3013, at *5 (W.D. Pa. Jan. 11, 2016)).

### b. Analysis

Marchitto and Vuuzle ("Defendants")[12] lodge several challenges to the SEC's motion. As discussed below, the Court rejects these arguments and will therefore grant leave for the SEC to file an amended complaint.

#### i. Technical Arguments

Defendants correctly note that the SEC failed to obtain leave of Court to bring its motion to amend, in violation of the undersigned's individual rules. Even the authority raised by Defendants, however, does not mandate that the Court deny the motion but instead calls for a discretionary determination whether it should do so. Particularly because of the considerable motion practice to date — most notably Marchitto's motion to dismiss, consideration of which hinges on the resolution of the instant motion — the Court will exercise its discretion to excuse the SEC's oversight so that the matter may proceed toward resolution on the merits. The parties are advised that moving forward, strict compliance with this, and all other, procedural rules will be expected.

Defendants also attack the form of the SEC's blackline version (ECF No. 45-3) of its proposed amended complaint (the "PAC", ECF No. 45-2), which was submitted per Local Rule 15.1(a)(2). While Defendants are correct that the SEC's blackline is not a paragon of clarity, as above, this does not mandate denial of the SEC's motion. Contra, e.g., Theodore v. Newark Dep't of Health, 2020 U.S. Dist.

---

[12] Because of the overlap between Marchitto's and Vuuzle's oppositions, the Court will at times refer collectively to "Defendants'" arguments, rather than parse the points raised by each party.

LEXIS 134436, at *5-6 (D.N.J. July 28, 2020) (denying motion to amend without prejudice where moving party failed altogether to attach blackline version of proposed complaint). The Court will again exercise its discretion to overlook any technical defect in the SEC's blackline PAC.[13]

### ii. **Rule 15 Arguments**

#### 1. **Futility**

##### a. **Aiding and Abetting Claims**

The Court rejects Marchitto's argument that the SEC's proposed aiding and abetting claims against him are futile.

The SEC's proposed aiding and abetting claim proceeds under Section 20(e) of the Exchange Act, which creates "[l]iability [for] controlling persons and persons who aid and abet violations" of the securities laws. 15 U.S.C. § 78t.[14] Some brief statutory background is in order here. The prior version of Section 20(e) made it unlawful for "any person t[o] knowingly provide[ ] substantial assistance to another person" in violation of the securities laws. In 2010, the Dodd-Frank Act amended the statute to impose liability on any person who "knowingly or recklessly" provides

---

[13] Defendants also attack the SEC's failure to submit a sworn certification in support of its motion. This issue dovetails with the Rule 15 undue delay argument discussed below.

[14] On the substantive end, for reasons not immediately apparent, through the PAC the SEC seeks to change the basis for its aiding and abetting claim from Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act to Sections 5(a) and 5(c) of the Securities Act. Compare Complaint, Third and Fourth Claims for Relief with PAC, Sixth Claim for Relief. "Section 5(a) of the Securities Act makes it unlawful for any person to sell a security in interstate commerce without a registration statement for that security. Section 5(c) extends this prohibition to those who offer to sell such securities." SEC v. Stinson, 2011 U.S. Dist. LEXIS 65723, at *6 (E.D. Pa. June 20, 2011) (citing 15 U.S.C. § 77e; other citations omitted).

such assistance. <u>See</u> 15 U.S.C. § 78t(e) (emphasis added); Dodd-Frank Wall Street

Reform and Consumer Protection Act, Pub. L. No. 111-203, Title VII, § 9290, 124

Stat. 1761, 1862, 1865 (2010); <u>e.g.</u>, <u>SEC v. Sugarman</u>, 2020 U.S. Dist. LEXIS

181034, at *31 n.11 (S.D.N.Y. Sep. 30, 2020) (noting statutory amendment).

The Third Circuit has long held aiding and abetting liability in this context to

entail three elements: "(1) that there has been a commission of a wrongful act - an

underlying securities violation; (2) that the alleged aider-abettor had knowledge of

that act; and (3) that the aider-abettor knowingly and substantially participated in

the wrongdoing." <u>Monsen v. Consol. Dressed Beef Co.</u>, 579 F.2d 793, 799 (3d Cir.

1978) (citing cases). The crux of the parties' dispute is whether "or recklessly"

qualifies the second element — such that instead of pleading Marchitto's knowledge

of an underlying securities violation, the SEC may instead plead reckless disregard

for it — or that it appends to the third element, meaning that the SEC can allege

that Marchitto recklessly (rather than knowingly) substantially assisted in the

violation, but must plead actual knowledge of the underlying offense. Courts have

interpreted the statute both ways. <u>Compare</u>, <u>e.g.</u>, <u>SEC v. Glob. Inv. Strategy UK</u>

<u>Ltd.</u>, 2021 U.S. Dist. LEXIS 202592, at *22 (S.D.N.Y. Oct. 19, 2021) (framing second

and third elements as "(2) knowledge or reckless disregard of the violation by the

aider and abettor, and (3) that the aider and abettor substantially assisted the

primary violation") (quoting <u>SEC v. Apuzzo</u>, 689 F.3d 204, 211 & n.6 (2d Cir. 2012))

<u>with</u> <u>SEC v. Dubovoy</u>, 2016 U.S. Dist. LEXIS 135243, at *15 (D.N.J. Sep. 29, 2016)

(citing second and third elements as "(2) the defendant provided substantial

assistance to the violator; and (3) the defendant knowingly or recklessly provided that assistance") (citing cases).[15]

The distinction is significant because the proposed aiding and abetting charges include statements that Marchitto "knew, or was reckless in not knowing" of the alleged securities violations. See PAC at, e.g., ¶ 133 ("Marchitto knew, or was reckless in not knowing, that the securities offerings were unregistered."). Marchitto argues — as suggested in <u>Dubovoy</u> — that the SEC can only resort to recklessness in the context of Marchitto's substantial assistance, and therefore cannot get away with pleading that Marchitto recklessly disregarded the primary securities violations.

The Court disagrees for two reasons, one legal and one factual. The former rationale was conveyed by the court in <u>United States SEC v. Wey</u>, 246 F. Supp. 3d 894 (S.D.N.Y. 2017). Similar to Marchitto's argument here, the defendant in <u>Wey</u> argued as to aiding and abetting conduct that preceded the 2010 statutory amendment, that the SEC needed to prove the defendant's actual knowledge, and therefore, allegations that the defendant "'knowingly or recklessly' aided primary violations" were insufficient. See <u>id.</u> at 928. The court rejected the argument:

> even though the Court finds that to the extent these
> Section 20(e) claims are based on pre-Dodd-Frank conduct

---

[15] While the cited matters provide useful examples of the two approaches toward the recklessness amendment, the Court respectfully notes some departure with both matters. First, although the <u>Glob. Inv. Strategy</u> court purported to quote the Second Circuit's <u>Apuzzo</u> decision, the cited proposition does not appear in <u>Apuzzo</u>; in fact, the <u>Apuzzo</u> court wrote that recklessness did not apply in that case and refrained from discussing it in any meaningful detail. See <u>Apuzzo</u>, 689 F.3d at 211 n.6. As to <u>Dobovoy</u>, its construction appears to dispense altogether of knowledge of a securities violation as a standalone <u>prima facie</u> element.

> they must meet an actual knowledge standard, these
> claims need not be dismissed simply because the words
> "or recklessly" were included in the pleading. . . . [T]his
> kind of disjunctive pleading is permissible. A complaint
> may plead two theories, only one of which need be legally
> viable. This is particularly true here where the mental
> state requirement is not settled in this circuit . . . .

Id. (citations omitted); see Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); e.g., Froid v. Berner, 649 F. Supp. 1418, 1422 (D.N.J. 1986) (where complaint alleged defendants "knew or had reason to believe" predictions were unrealistic, court held the "Defendant is correct that plaintiff must prove more than negligence to prevail in this 10b-5 suit. The court holds, nonetheless, that this disjunctive pleading is sufficient to survive a 12(b)(6) motion to dismiss.") (citing cases). Here too, the SEC's disjunctive pleading does not render its proposed allegations futile.

Perhaps more significantly, even accepting Marchitto's argument, the PAC sufficiently alleges Marchitto's actual knowledge of the alleged securities violations. Importantly, the SEC does not "have to specifically allege that [Marchitto] knew that [defendants were] violating Section [5]. To establish knowledge, the SEC must show a defendant's general awareness of [his] overall role in the primary violator's illegal scheme. The scienter requirement for aiding and abetting a regulatory violation means awareness of the underlying facts . . . ." Glob. Inv. Strategy UK, 2021 U.S. Dist. LEXIS 202592, at *24 (citations and quotation marks omitted).

The PAC adequately does this. It alleges, for example, that

> Marchitto's primary responsibility was to monitor the
> U.S. bank accounts and communicate on a regular basis

with Flynn, Flynn's secretaries, and other boiler room
staff to keep them informed as to when a given investor's
funds have been deposited, the investment amount, and
when funds will be available for disbursement. . . . When
investor funds are deposited, Flynn and Marchitto
coordinate to determine where the money should go and it
is quickly transferred out. . . .

Marchitto provided substantial assistance to Flynn,
Vuuzle U.S., and Vuuzle UAE
by establishing a U.S. corporate and financial presence for
Vuuzle. . . . Marchitto: (a) organized Vuuzle's predecessor
legal entity and served as its initial member; (b) opened
and maintained as sole signatory a series of U.S. bank
accounts used to receive and disburse more than $16.1
million of Vuuzle investor funds; and (c) maintained a
New York City office space, which was represented to
investors as Vuuzle's primary place of business. . . .

[Marchitto] monitored the banks accounts for the express
purpose of flagging investor deposits and notifying
Flynn's boiler room staff when investor funds were
received into the account. Marchitto monitored mail sent
to the New York office space he maintained, and collected
investor checks for deposit and investment subscription
agreements that he forwarded to Flynn and his boiler
room staff.

PAC at ¶¶ 62, 131-32. It would be impossible for Marchitto to do these things

without a "general awareness of [his] overall role in the primary violator's illegal

scheme."[16]

For the reasons stated, the Court rejects Marchitto's argument that the

proposed aiding and abetting claims against him are futile.

---

[16] These allegations also suffice under the alternative construction whereby the SEC must
allege that Marchitto knowingly assisted in the securities violation.

### b.  **Direct Claims**

Marchitto passingly makes two arguments as to the futility of the SEC's proposed direct claims against him. One is that the SEC purportedly converted the Complaint's aiding and abetting claims to primary liability claims in the PAC, and consequently, that the allegations underlying the two are essentially identical. Whether or not this is true, it is of no moment: there is nothing wrong with the SEC making this change, nor does Marchitto cite any authority that there is. Cf., e.g., King County v. IKB Deutsche Industriebank AG, 751 F. Supp. 2d 652, 666 (S.D.N.Y. 2010) ("[P]laintiffs may plead both primary fraud and aiding and abetting; such a pleading strategy is legally permissible, as plaintiffs need not, at the motion to dismiss stage, choose amongst alternative theories of relief.").

Marchitto also states that the SEC "manifestly fails" to plead fraud with particularity as required under Rule 9(b). Marchitto does not expand on why this is the case, and the Court finds it is simply not so. "Rule 9(b)'s particularity requirement requires a plaintiff to allege 'all of the essential factual background that would accompany the first paragraph of any newspaper story — that is, the who, what, when, where, and how of the events at issue.'" United States ex rel. Bookwalter v. UPMC, 946 F.3d 162, 176 (3d Cir. 2019) (quoting United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016)). The PAC — which in a different context Marchitto criticizes as "prolix", ECF No. 71 at 16 — is replete with allegations satisfying Rule 9(b). To state just a few, the SEC alleges that Marchitto established Vuuzle's predecessor company; leased a

New York City address which was falsely represented to be the headquarters of Vuuzle U.S.; opened and operated multiple bank accounts through which investor funds were funneled to Flynn and himself; and paid expenses associated with their boiler room operations from investor funds. PAC at, e.g., ¶¶ 22, 51-61, 66, 72-79, 131.

The Court thus rejects Marchitto's futility arguments as to the primary securities violations asserted against him.

### 2. Undue Delay/Lack of Sworn Certification

Defendants argue that the SEC unduly delayed in seeking to amend its complaint. Their argument primarily fails because it is premised upon the wrong standard: while "Rule 16(b)(4) applies once a scheduling-order deadline has passed", Premier Comp Sols., LLC v. UPMC, 970 F.3d 316, 318 (3d Cir. 2020), "[a] motion to amend a pleading that is filed before the deadline for amendments of pleadings has passed in a Rule 16 Scheduling Order will be governed by Rule 15(a) only." Velto v. Reliance Standard Life Ins. Co., 2011 U.S. Dist. LEXIS 20933, at *6 (D.N.J. Mar. 1, 2011) (emphasis added). As noted, the SEC moved to amend within the time for them to do so. ECF No. 38 at ¶ 3. Consequently, Rule 16 — which is considerably "[more] exacting" than Rule 15, Fermin, supra — has no place here. It follows that Vuuzle's litany of cases involving purportedly "[a]nalogous delays" is inapposite, since those matters involve determinations of good cause under Rule 16. See ECF No. 70 at 14 and cases cited therein.

Turning, then, to Rule 15, "[t]he passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court". Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984) (citing cases). The SEC's delay of approximately eight months from the filing of this action to seeking leave to amend is not, on its own, undue. See Arthur v. Maersk, Inc., 434 F.3d 196, 205 (3d Cir. 2006) ("[A] period of eleven months from commencement of an action to the filing of a motion for leave to amend is not, on its face, so excessive as to be presumptively unreasonable.") (citing cases).

With this said, "[w]hen a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." Id. (citing cases). To this end, Defendants argue that because the PAC alleges facts occurring before the SEC moved to amend (or even before the SEC filed the Complaint) the SEC could and should have sought to amend its complaint earlier — or, for that matter, raised the new allegations in its original pleading. This argument fails. Just because certain alleged events happened at a given time does not mean that the SEC knew about them contemporaneously with their occurrence. And to the extent that some of these matters were advertised publicly, see, e.g., PAC at ¶ 115 (discussing April 2021 press release), the SEC did not necessarily have sufficient grounds at the times of publication to support the new claims set forth in the PAC.

It's here that the SEC's lack of a sworn certification comes into play, since Defendants complain about this factor in the context of the SEC's representation that it moved to amend only upon recently learning of certain facts. While the SEC's failure to attach a certification, and the SEC's inclusion of these factual statements in a memorandum of law, may not be best practice, the Local Rules prohibit only the contrapositive. See L. Civ. R. 7.2(a) ("Affidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents."). As above, Defendants provide no authority calling for the Court to disregard the SEC's representations in its memorandum of law.

Moreover, "[g]iven the liberal standard under Rule 15(a), the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." Dopico v. IMS Trading Corp, 2016 U.S. Dist. LEXIS 11681, at *3-4 (D.N.J. Feb. 1, 2016) (quoting Wainwright v. City of Sharon, 2016 U.S. Dist. LEXIS 3013, at *5 (W.D. Pa. Jan. 11, 2016)). Therefore, even if the SEC's representations as to timeliness were inadequate, this would not suffice to deny the motion. Instead, Defendants must show that the SEC did know, or should have known, of certain facts and nonetheless did not promptly move to amend. As Defendants have not done so, their undue delay arguments fail.

### 3.  <u>Prejudice and Bad Faith</u>

Defendants argue that the SEC's motion should be denied on prejudice grounds because the introduction of new parties will delay this matter's resolution and increase litigation efforts and costs. This argument fails. Prejudice entails not merely a burden, but "an <u>unfair</u> burden on the opposing party." <u>Adams</u>, 739 F.2d at 868 (citing cases) (emphasis added). It is true that the proposed amendments may very well force Defendants to expend resources that they otherwise would not have incurred. But this is not necessarily unfair. Indeed, if the standard were as Defendants propose, amendments would almost never be permitted. To this end, courts generally do "not deny a moving party's amendment [on prejudice grounds] unless the nonmoving party specifically shows that it was 'deprived of the opportunity to present facts or evidence which it would have offered' had the moving party's amendments been timely filed." <u>Butcher & Singer, Inc. v. Kellam</u>, 105 F.R.D. 450, 453 (D. Del. 1984) (quoting <u>Heyl & Patterson International, Inc. v. F. D. Rich Housing, Inc.</u>, 663 F.2d 419, 426 (3d Cir. 1981), <u>cert.</u> <u>denied</u>, 455 U.S. 1018, 102 S. Ct. 1714, 72 L. Ed. 2d 136 (1982)) (rejecting prejudice argument where, as here, non-moving party's "allegations of prejudice are presented in a conclusory fashion consisting of a single paragraph. [Non-movant] suggests that additional discovery will be required, . . . but it fails to explain precisely the additional discovery that it will need."). As Defendants have made no such showing, the Court rejects their prejudice argument.

As to bad faith, Defendants lodge accusations grounded in the SEC being actively or constructively aware of the PAC's claims at the time the SEC filed the Complaint, and the SEC moving to amend so it could moot Marchitto's motion to dismiss "by actions that are not warranted by the record." ECF No. 71 at 27. Defendants provide no explanation or authority as to why any of this constitutes bad faith, which it does not. Bad faith requires something such as an "indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay." Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986) (citing Baker Industries, Inc. v. Cerberus, Ltd., 764 F.2d 204, 223 (3d Cir. 1985) (Higginbotham, J., dissenting)). The Court is entirely "not convinced that Plaintiff is seeking to amend [its] complaint based on bad faith rather than the otherwise colorable claims asserted in" the proposed amended pleading. Militello v. Allstate Prop. & Cas. Ins. Co., 2015 U.S. Dist. LEXIS 77481, at *9 (M.D. Pa. June 16, 2015) (denying bad faith argument). The Court therefore rejects Defendants' bad faith contentions.

As Defendants have failed to justify denial of the SEC's motion to amend its complaint, the Court will grant the motion.

## V. **Conclusion**

The Court will issue orders consistent with this opinion.

Dated: February 14, 2022

_/s/ Cathy L. Waldor_
Cathy L. Waldor, U.S.M.J.
